UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

       Plaintiff,                                    No. 05-71198

v.                                              Hon. John Corbett O'Meara

MICHIGAN DEPARTMENT OF STATE
POLICE and TADARIAL STURDIVANT,

       Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

A juvenile sex offender is challenging the constitutionality of Michigan's Sex Offender Registration Act ("SORA"). On March 28, 2005, Plaintiff moved for a preliminary injunction preventing the state police from enforcing the law's registration requirements or disclosing the plaintiff's identifying information until the final resolution of this case. Defendants filed a response on April 21, and plaintiff filed a reply on April 27. The court heard oral argument on April 28. For the following reasons, plaintiff's motion for preliminary injunction is denied.

### Background

In May 1999, a petition alleging first-degree criminal sexual assault was filed against Plaintiff in the Macomb County Circuit Court's Family Division. At the time of the offense, Plaintiff was thirteen years old and the complainant was four years old. In December 1999, Plaintiff pleaded guilty to two counts of fourth-degree sexual conduct. In January 2000, Plaintiff was sentenced to probation and was eventually discharged from the probate court's supervision.

SORA requires Plaintiff to register with the state police. M.C.L. § 28.721, *et seq.* The statute was amended effective on September 1, 1999 to require Plaintiff to verify his address and other identifying characteristics four times per year, for twenty-five years. Failure to comply with the registration and verification requirements of SORA subjects offenders to felony prosecution. Juvenile offenders who are convicted of third-degree or fourth-degree criminal sexual conduct are not listed in Michigan's public index of sex offenders, which is available on the State Police's internet website. M.C.L. 28.728(3)(a). The identities of these juvenile offenders are made available only to law enforcement personnel. M.C.L. 28.730.

## Law and Analysis

Plaintiff alleges violations of three constitutional provisions - the Due Process Clause, the Equal Protection Clause, and the Ex Post Facto Clause. To determine if a preliminary injunction is warranted, the court examines four factors: whether the movant has demonstrated a substantial likelihood of success on the merits, whether the movant would suffer an irreparable injury if the court did not issue a preliminary injunction, whether a preliminary injunction would cause substantial harm to others, and whether a preliminary injunction is in the public interest. Jones v. City of Monroe, Mich., 341 F.3d 474, 476 (6th Cir. 2003). In this case, all four of the factors counsel against issuing a preliminary injunction.

I.  Likelihood of Success on the Merits

    A.  Due Process Claim

The Sixth Circuit recently found that SORA did not violate the Due Process Clause when applied to a non-juvenile who claimed that he did not have an opportunity to be heard regarding his future dangerousness. Fullmer v. Michigan Department of State Police, 360 F.3d 579 (6th

Cir. 2004). Relying on the United States Supreme Court's decision in Connecticut Dep't of Public Safety, et al. v. Doe, 538 U.S. 1 (2003), the Sixth Circuit held that future dangerousness was not relevant to the Due Process analysis because the statute relied only on a past conviction to trigger registration. Fullmer, 360 F.3d at 582.

Plaintiff claims he "has a constitutionally protected liberty, property interest in not being falsely designated as a sex offender who poses a threat to the public safety." Pl. Br. at 2. Plaintiff is apparently trying to draw a distinction from Fullmer because he is a juvenile. He believes juvenile offenders are treated differently under Michigan law and should be given a second chance to rehabilitate themselves. See id. However, due process is not implicated by the state's registration requirement. Plaintiff has already been afforded due process to litigate the underlying offense. "States are not barred by principles of 'procedural due process' from drawing such classifications [as to whether or not a person has been convicted of a sex offense]" Connecticut Dep't of Public Safety, 538 U.S. at 8. The Michigan legislature clearly intended juvenile offenders to register under SORA. The statute instituted special procedures for juvenile offenders. Procedural due process does not prevent the state from creating these distinctions. Id. The plaintiff has not argued that his substantive due process rights were violated, and the court need not reach that question.

    B. Equal Protection Claim

In a concurring opinion in Connecticut Dep't of Public Safety, Justice Souter mentioned the possibility to an equal protection clause challenge to sex registry statutes. Id. at 9-10. The Connecticut statute, like SORA, allowed a court to exempt some sex offenders from registration requirements or to limit the dissemination of offender's information to only law enforcement

3

personnel. Because the statute treated some sex offenders differently than others, Justice Souter saw a potential challenge under the Equal Protection Clause.

Plaintiff's Equal Protection challenge in this case is unlikely to succeed, however. Plaintiff does not argue the classifications noted by Justice Souter. Indeed, he seems to be the beneficiary of some of these distinctions. Plaintiff has not pointed to any evidence that suggests he was not afforded equal protection under the law. He has not shown that he is a member of a suspect class or that a fundamental right is in jeopardy. As such, rational basis scrutiny applies to his equal protection claim. Plaintiff, as a juvenile sex offender, is treated differently from other juvenile offenders who do not have to register with the state. Juvenile sex offenders arguably have a higher degree of recidivism and present a potentially greater threat to public safety than do other juvenile offenders. While some would no doubt quarrel with the recidivism argument, especially in individual cases, this is a rational classification for the legislature to make.

C.  Ex Post Facto Claim

Plaintiff argues that the Ex Post Facto Clause is violated because the quarterly reporting requirements were instituted in September 1999 and his offense occurred in 1998,  The Supreme Court held that a similar sex registry law from Alaska did not violate the Ex Post Facto Clause because the law was not punitive in nature. Smith v. Doe, 538 U.S. 84 (2003). The court first examined whether the legislature intended to create a punitive law or a civil regulatory scheme. Id. at 92-93. Smith found that the Alaska legislature intended the registry to be a civil regulation. SORA's statement of purpose states

> The legislature declares that the sex offenders registration act was enacted
> pursuant to the legislature's exercise of the police power of the state with the

>   intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

M.C.L. 28.721a.  The legislative intent is to create a civil regulatory scheme to protect public safety.

The court must next examine the actual effects of the law. Smith, 538 U.S. at 97.  If the plaintiff can show "by the clearest proof" that the statute's effects negate the state's intention to create a civil regulatory scheme, the statute could violate the Ex Post Facto Clause. Id. at 105-06.  Seven factors traditionally guide the analysis. Id. at 97. (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963)).  The court found that in the context of a sex offender registry, the most relevant factors were whether the regulatory scheme 1) has been regarded in our history and traditions as punishment, 2) imposes an affirmative disability or restraint, 3) promotes the traditional aims of punishment, 4) has a rational connection to a non-punitive purpose, or 5) is excessive with respect to this purpose. Id.[1]

The Supreme Court found that in the case of Alaska's registration act, the factors did not show by the clearest proof that the effects negated the state's intent to create a civil regulatory scheme.  The court found that history and tradition did not regard the registry as a punishment. Id at 97-99.  The court also found that any affirmative disability or restraint was minor and

---

[1] The court found that the remaining two Mendoza-Martinez factors - whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime - were of little weight in the context of sex registry statutes. Id. at 105.

indirect. Id. at 100-01. Alaska's act did not restrict freedom of movement, employment, or activities. It was not like a probation or supervised release because there were no affirmative requirements other than reporting. Id. at 101-02. The court further held that the fact that it might deter crime does not by itself make the act punitive. Id. at 102. Public safety was the an important non-punitive purpose to which the Alaska act was rationally related, and the purpose was not found to have been excessive. Id. at 102-05.

Michigan's SORA is substantially similar to the Alaska statute. As applied in this case, SORA is even less punitive because the plaintiff will not even appear on public registry. SORA is a little different from the Alaska statute because it requires sex offenders to go to a police station in person every quarter. This potentially imposes more of an affirmative disability on registrants than the Alaska act imposed. However, many civil regulatory schemes, including driver's license laws, require citizens to physically register with state authorities. When all of the factors are considered, SORA is not punitive in nature.

II.  Irreparable Injury

Plaintiff has also not established an irreparable injury. Because he is a juvenile convicted of fourth-degree sexual conduct, Plaintiff's information will not be made public when he registers with the state police. It is made available only to law enforcement personnel, who may not disclose the information to outside parties. A risk of harm to reputation or improper use of such information is not present. Moreover, if this court later found the act to violate his constitutional rights, his name could be removed from the registry without substantial injury.

III.  Substantial Harm to Others & Public Interest

Based on the lack of a substantial likelihood of success on the merits or an irreparable injury alone, the court determines that a preliminary injunction is not warranted.  However, the final two factors also weigh against issuing an injunction.  Because of the substantial risk of recidivism among sex offenders, the public safety might be at risk by removing plaintiff's name from the registry.  The State Police Department would also be harmed by not having all of the information the legislature intended for it to have to protect the public safety.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's March 28, 2005 Motion for Preliminary Injunction is **DENIED**.


                          s/John Corbett O'Meara
                          John Corbett O'Meara
                          United States District Judge

Dated:  May 5, 2005